W. W. WHITLOCK, *et. al.*, executors, plaintiffs in error, *vs.*
JANE VAUN, defendant in error.

1. By the third item of the will of A. V., he gave to his wife, during her
widowhood, certain negroes and other personal property, and about
five hundred and twenty acres of land, known as his "Home place."
In case of her marriage, the negroes were to be divided into three lots,
she to take one and his two youngest sons each one share, and his said
two youngest sons to take the balance of the property in said third
item, including the "Home place," which was to be held by their
guardian till they were of age. Testator afterwards sold the "Home
place" to K. for $10,000, and took notes, and gave bond for titles.
After this sale, he added a codicil to his will, in which he expressed his
purpose to give direction to a "certain fund that he shall have," and
recited the fact of the sale of the "Home place" for $10,000, and
directed that "said sum of money" be invested by his executors in a
plantation for the use of his wife during her widowhood, and if she
should marry again, said plantation to go to his two youngest sons as
set forth in the third and fourth items of his will. He afterwards col-
lected $2,500 of the purchase money, which he used, and soon after
died. The balance of the purchase money has never been paid, the
title to the "Home place" remains in the estate, and K., the purchaser,
is insolvent. *Held*, that there was an ademption of the specific legacy
to the extent of the $2,500 collected and used by the testator before
his death, and as there is nothing for the codicil to act upon till the
purchase money due at his death, (which is the "certain fund" that
was the object of it,) is collected, the codicil, made under a mistake,
did not revoke the will, as to the "Home place;" and that the widow
and two youngest sons take it, under the third item of the will.
2. But should the purchaser, at a future time, pay the balance of the
purchase money and interest, and compel a conveyance of the land,
the codicil will then attach to the fund, when so paid in, and it will be
the duty of the executors to invest it in a plantation for the widow and
children as directed in said codicil.

Construction of will. Ademption of legacy. Before Judge
HANSELL. Thomas Superior Court. March Term, 1867.

On the 4th of May, 1859, Adoniram Vaun made his last
will. By the third item of it he gave to his wife, Jane Vaun,
*durante viduitate*, twenty slaves and his "Home place," with
stock, furniture, provisions, etc. If she married the slaves
and their increase were to be divided equally between her
and his two minor sons. The fourth item provided that the

slaves belonging to said minors, after such division, and all the other property mentioned in the third item should be divided equally between said minors, each taking his half upon attaining his majority, and that during her widowhood Mrs. Vaun should receive the rents, issues and profits of all the property covered by the third item, except so much of them as was necessary for the maintenance and education of said sons. No part of said property was to go to the payment of the debts, until the residue of the estate was exhaust-ed, but so soon as it was ascertained that there were other assets sufficient to pay the debts, the executors were to turn over all of said property to Mrs. Vaun and the testamentary guardians of said sons, and after that, the executors were to have no further control over that part of the estate.

He made other bequests to trustees for his daughters, and nominated Smith Paramour and said Whitlock as his executors. On the 4th of May, 1860, he made a codicil by which he made a different disposition of one of the slaves mentioned in said third item, and provided that $900 00 be paid to the said trustees out of the property mentioned in said third item, because he had expended that sum on that property since making his will.

In October, 1860, he made another codicil, stating his reason therefor to be " to give direction to a certain fund that I shall have," and provided as follows : " In consequence of my having sold the residence and lands attached to the same, as bequeathed in the the third item of my will and testament, for the sum of $10,000 00, it is my desire, and I do will that said sum of money be re-invested by my executors before named for a plantation for the use of my beloved wife during her life or widowhood. If she should marry again, said plantation is to go and to belong to my beloved sons," said minors " as specified in the third and fourth items of my will and testament."

In January, 1861, testator died. The will and codicils were proven, and the executors qualified and took posssession of the estate. In 1867, Mrs. Vaun, in behalf of herself, and as *prochein ami* of said sons, filed her bill against said execu-

tors, setting forth the foregoing and the following facts: Testator intended that she should have a farm and slaves to work it. The mass of his estate was in choses in action which had not been collected, and therefore no farm had been bought for her. Slavery was abolished, and therefore she could never have slaves to work a farm. The other property given to her and said minors was not sufficient for her support, and the maintenance and education of said sons. She therefore prayed that the executors be compelled to pay over to her $10,000 and interest, that part be hers, and that she be allowed to invest the balance of it for the maintenance and education of said sons.

The executors, by answer, admitting the facts averred, said the change of circumstances could not change the will, and such a change would be unjust to the other legatees, because the estate could not pay the legacies, nor would sell for $10,000 00. They said no interest ought to be allowed; that the proceeds of the "Home place" constituted the fund out of which testator intended said bequest to be paid; that testator sold the "Home place" to one Kearse, for $10,000 00 on a credit, taking Kearse's notes. He tendered the complainant said notes, or the "Home place," (of which they held the title, Kearse having gotten no title,) in payment of the legacy; that besides the "Home place" there were no assets in this State but $3,000 00 or $4,000 00 in doubtful notes. The parties agreed that the Chancellor should decide the matter upon the bill and answer. He decreed that the executors should pay to Mrs. Vaun $9,100 00, with interest only from the 1st of January, 1866, (because interest could not have been made before that date,) with the power in her to use the interest of said sum for the support and maintenance of herself and said sons and their education; that the principal be invested in good securities under his direction, and that the $900 00 be paid as provided by the first codicil.

The executors excepted, and say the Chancellor erred in requiring said $9,100 00 paid, and the complainant says he erred in not giving her interest from January, 1861. Though it does not appear that any evidence was introduced in the

assignment of errors, he states that testator had received $2,500 from Kearse, and the executors offered to pay that to complainant, and give her the notes, and though the reasons for the decree *in extenso* are in the record, there is no allusion to $2,500 00 in the record elsewhere than in the said assignment. But in the argument said assignment was treated as being based on the.evidence.

A. B. WRIGHT, WILLIAM DOUGHERTY, J. L. SEWARD, for plaintiffs in error.

A. D. MCINTYRE, for defendants in error.

BROWN, C. J.

1. By the third item of his will the testator gave to his wife during her widowhood, twenty negroes and other personal property, and the " Home place," upon which he then resided, consisting of about 520 acres of land in Thomas county. In case of her marriage, he directed that the testamentary guardians of his two youngest sons, Henry A. and Daniel M. Vaun, apply to the Court of Ordinary, and have an appraisement made, of the negroes, and that they be divided into three lots, and that his wife and her husband draw one of said lots, to be made equal, if not equal, as her full share of his estate mentioned in said item.

By the fourth item he directed, in case of his wife's marriage, that all the property mentioned in said *third item*, except the one-third of the negroes, shall go to his said two youngest sons, to be kept together by their testamentary guardians till they are twenty-one years of age.

The will bore date on the 4th day of May, 1859. On the 4th day of May, 1860, he made a first codicil to his will which has no relevancy to the point now in issue.

On the 20th day of October, 1860, he made a second codicil, in which he recited that he was desirous of altering and changing, and giving some direction to a " certain fund," that he shall have, and proceeds as follows :

" In consequence of my having sold the residence and lands

attached to the same, as bequeathed in the third item of my will and testament, for the sum of ten thousand dollars, it is my desire and I do will, that *said sum* of money be reinvested by my executors before named, for a plantation for the use of my beloved wife during her life or widowhood. If she should marry again said plantation is to go to and belong to my beloved sons Henry A. Vaun and Daniel M. Vaun, as set forth and specified in the third and fourth items of my will and testament."

The record shows that the sale of the home place mentioned in said third item of the will was made to one Franklin Kearse, who took bond for titles, and afterward paid to testator in his life time $2,500 of the purchase money. The title still remained in the testator, and has not passed out of his estate. The purchaser is admitted to be insolvent, and unable to pay the balance of the purchase money; and the question now arises what are the rights of the widow under the will. No point is made in reference to the personal property, as the negroes have all been emancipated.

The first inquiry is, what was the intention of the testator? It is the duty of the Court to seek diligently for that intention, and give effect to it, if it can be done consistently with the rules of law. Revised Code, 2420. We think it very clear that the intention of the testator in this case, was to provide a home for his wife during her life or widowhood, and after her death or marriage, that it should go to his two youngest sons. In execution of this design, he gave her his home place, describing it by the numbers of the lots and the number of acres. After the execution of the will he sold the home place to Kearse, on a credit, and took his note for $10,-000, for the purchase money, and gave bond for titles. Soon after this sale, he executed the second codicil to his will, in which he speaks of a "certain fund" that he will have, and then states the fact of the sale of the "Home place" for $10,000, and directs that *said sum* be reinvested by his executors in a plantation for the use of his wife during her life or widowhood, and if she married again, then the plantation to go to

his said two youngest sons, as set forth and specified in the third and fourth items of his will.

Now we think there can be no doubt that the devise of the "Home place," in the third item of the will, is a specific legacy. When the testator made the contract for the sale of the "Home place," he believed he had adeemed the legacy. And he then executed the codicil, the whole purpose of which was to set apart the $10,000, which he was to get for the "Home place" to be used by the executors in the purchase of another plantation for his wife and sons, in lieu of the "Home place." He speaks of it as a "certain fund," which he would have, and then specifies the amount and for what he should receive it, and directs that said sum be used as aforesaid.

Was the legacy given by this codicil a specific legacy, of the "particular fund" which he was to receive for his "Home place," and not a general legacy of the sum of $10,000 ? A gift of money to be paid from a specified sum is a general legacy. Revised Code, 2422. This was not a gift of money to be paid from a specified sum, but it was a gift of a "particular fund," not of part of it, or of a sum to be taken from it, or out of it, but a gift of the whole of "said sum," a particular fund, raised by the sale of a specific legacy, which he thought he had adeemed, and which he directed should be invested in another plantation to take the place of the one he had given his wife and sons in the third item of his will. Suppose it had become necessary that general legacies abate to pay debts, does any one who reads this will believe that it was the intention of the testator that this particular fund for which he thought he had sold the "Home place," and which he directed should be invested in another home for the widow and the two youngest sons should abate pro rata ! This idea is expressly negatived by the testator himself in the fourth item of his will. He says :

" It is my wish and will, and I direct my executors herein after named, that under no circumstances, is the property mentioned in the third item, to go towards the payment of my just debts, unless the whole of the residue of my other property shall be exhausted." The primary object of the

testator was to furnish a comfortable home for his wife during her widowhood, and for his two youngest sons, after her marriage or death. To this object he made every other bend. To accomplish it he gave her his "Home place" as a specific legacy, which was in no case to be taken to pay debts till all the residue of the estate, not mentioned in the third item of the will, was exhausted. When he thought he had sold the "Home place" he then gave her the specific sum for which he sold it, to be used in the purchase of another home. That this is a specific legacy, see Redford on Wills, 463–5–7, part 2d; 3 Ves., 321.

But the testator was mistaken, he had not adeemed the specific legacy by a sale of the "Home place," as the purchaser failed to pay for it, and the title remained in him when he died, and still remains in the estate.

A legacy is adeemed when the testator conveys to another the specific property bequeathed, and does not afterwards become possessed of the same, or otherwise places it out of the power of the executor to deliver over the legacy. Revised Code, 2438. But if the testator attempts to convey, and fails for any cause, the legacy is still valid. See same section.

Now that is precisely this case. The testator believed he had sold the "Home place." But it turns out that he failed to dispose of it. He has not placed it out of the power of the executors to deliver it over to the widow, for the record shows that the title is still in the estate, and they offer to deliver it over to the legatees.

We hold that the codicil did not revoke the will, because made under a mistake. And as the "Home place" can still be turned over to the legatees under the third item of the will, and the $10,000 has never been collected, there was nothing for the codicil to act upon.

2. If the balance of the purchase money had been paid to the executors after the death of the testator, we think the $2,500 collected by him and used during his life time, adeemed the legacy *pro tanto*, and the executors could only have invested the remaining $7,500, with the interest in a

Whitlock *et al.*, *vs.* Vaun.

plantation for the widow and his two youngest sons, under the second codicil. Should the purchaser of the "Home place," who is admitted by the record to be insolvent, become able to pay the balance of the purchase money within the time when he can compel a conveyance of the title to him, then there will be something for the codicil to act upon, and it will be the duty of the executors to invest all the purchase money paid to them in a plantation as directed by the codicil.

Judgment reversed.